UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEITH BRANDON SMITH,

    Petitioner,

v.                                                Case No. 2:06-cv-178
                                                HON. R. ALLAN EDGAR

LINDA METRISH,

    Respondent.
_____/

**REPORT AND RECOMMENDATION**

Petitioner Keith Brandon Smith filed this petition for writ of habeas corpus challenging the validity of his state court conviction for second degree murder. Petitioner was convicted after a jury trial and sentenced to a term of life imprisonment.

Petitioner maintains that his conviction was obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his petition:

I. The use of defendant's involuntary statements was a violation of defendant's Fifth Amendment right against self incrimination.

II. The fact that the prosecutor chief res gestae witness testified at defendant's trial to the fact of taking a polygraph test as part of his plea agreement unduly prejudice defendant's constitutional right to due process.

>III. Defendant was denied his state and federal constitutional rights of due process and his rights against self incrimination when statements pertaining to plea negotiation were used during his trial.
>
>IV. The failure of the prosecutor to disclose to the defense that Mr. Bruce Long had committed perjury was not harmless error, and the court abused its discretion and denied defendant's right of due process by failing to declare a mistrial.
>
>V. Defendant was denied the effective assistance of appellate counsel where his appellate counsel failed to raise and sufficiently argue issues in defendant's appeal of right.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Respondent argues that issues I, II and III are procedurally defaulted. When a state-law default prevents further state consideration of a federal issue, the federal courts are ordinarily precluded from considering that issue on habeas corpus review. *See Ylst v. Nunemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). The Sixth Circuit applies a four-part test to determine whether a claim is procedurally defaulted: (1) the court must first determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the state procedural rule; (3) the default must be an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) if the foregoing are met, the petitioner must demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001). There may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 122 S.Ct. 877, 878 ( 2002). A petitioner may also excuse a default by making a colorable claim of innocence; that is, he has shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). This exception is reserved for a very narrow class of cases, based on a claim of "new reliable evidence." *Schlup*, 513 U.S. at 315, 324.

Petitioner first raised these claims in a motion for relief from judgment which was denied in the trial court. The Michigan Court of Appeals and Michigan Supreme Court both denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Under MCR 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction

- 4 -

based upon claims that were decided against him in a prior appeal or that could have been raised on direct appeal. For claims that could have been raised, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." MCR 6.508(D)(3)(a)-(b). In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1104, 1006-1007 (6th Cir. 2000). Because MCR 6.508(D) was enacted in 1989 and petitioner's conviction and appeals took place some time thereafter, MCR 6.508(D) was a "firmly established" procedural rule for purposes of petitioner's action. *See Luberda*, 211 F.3d at 1007; *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998).

In order to excuse this default, petitioner must establish cause and prejudice for the procedural error. Attorney error can satisfy cause for a procedural default. Petitioner asserts that his appellate attorney erred by not asserting these claims in his first appeal. To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether petitioner's trial counsel's alleged failures were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc), cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

*West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

Petitioner argues that he never received *Miranda* warnings before he confessed his crime to police and that the only reason he made a confession was because the detectives told him that they would be more lenient on him if he confessed to the crime. Petitioner argues that the circumstances of his confession violated *Miranda v. State of Arizona*, 384 U.S. 436, 478, 86 S. Ct. 1602, 1630 (1966). A hearing on petitioner's motion to suppress was conducted in the trial court. The court concluded that petitioner received *Miranda* warnings and his constitutional rights were not violated. The trial court stated:

> Next, the Court must determine the Walker hearing issues with regard to these pre-plea agreement statements. In that connection I find that the defendant was properly Mirandized, that is, he was given his Miranda warnings. They were read to him by Detective Gizzi. Detective Keene verified and confirmed that they were given. Also, the detectives testified that Mr. Smith acknowledge those, said he understood them, and that he was willing to talk to them. So, I find that there has been complete compliance with Miranda warnings, and that a valid waiver was secured from the defendant, and that was done in the unmarked detective's car at the scene of the arrest on Middlebury Street in Elkhart, Indiana.

- 6 -

> The statements, therefore, following the administration of those Miranda warnings are admissible and may be used at the forthcoming trial.
>
> The videotape that I saw would likewise be admissible. The Court did not see or hear anything in evidence either on the tape or from the testimony that was presented that would lead the Court to conclude that that statement was anything other than voluntary. The defendant's claims to the contrary are simply not credible, and not borne out by what I saw on the videotape, and I don't find the defendant's claims to be very credible. Even by the officer's own admission and by his, this is an individual who has already admitted lying on numerous occasions to the police officer in giving approximately ten different variations on this same sequence of events. His claim that they made a promise to go to the prosecutor and get a reduction to a manslaughter charge is not supported by the evidence in the Court's opinion. He's the only one that claims it, and I find his claims to that effect are not credible or believable. Those statements are all admissible, and I do so rule. The defense motion to suppress them is denied.

There exists no support in the record that appellate counsel should have presented this claim in the initial appeal. In the opinion of the undersigned, petitioner has not established cause or prejudice for his procedural default.

Petitioner claims that his rights were violated during the trial when prosecution witness Bruce Long testified on direct examination that he was testifying under a plea agreement that required him to take a lie detector test. Petitioner argues that this statement was highly prejudicial and used to bolster the prosecution witness' credibility. The trial court ruled:

> First of all, from the proposition that polygraph test results are not admissible and not deemed scientifically reliable enough to allow for admission, at least that's the present state of the law, yes, the fact that a polygraph test was involved in the plea agreement or the polygraph test was taken would have been better if that was not mentioned. It did appear to have been volunteered by the witness and was certainly nonresponsive to the last question. It could have been anticipated that when you asked him about the plea agreement that he might have mentioned the polygraph, and yes, it probably would have been better

> if he had been warned not to mention that aspect of the plea agreement. But once mentioned, what is the proper remedy?
>
> I do not think that going into the results of the polygraph examination is an appropriate remedy because, first of all, the fact that they're not admissible and, secondly, the Court on an issue like this has to exercise its discretion pursuant to MRE 403 and determine if this would lead to confusion with the jury, prejudice, unnecessary and irrelevant matters. The Court, exercising my discretion pursuant to that rule, concludes that it would not be productive, would be prejudicial and confusing, and not appropriate to get into what the results of the polygraph examination were.
>
> A clear example of that would be of course would be if we've got inconclusive results, we have a polygraph examiner testifying, we get off on a side issue here that's not relevant. They have the opportunity to evaluate this witness' credibility for themselves based upon all of his testimony, and an inconclusive result on the polygraph test in my opinion would not aid them in that determination of this witness' credibility.
>
> So, under 403 I deny your request to explore this matter further. Both sides should drop it at this point and no further discussion should be made of polygraph results.
>
> Mr. Long is specifically cautioned: Don't mention that again.

In the opinion of the undersigned, appellate counsel was not ineffective for failing to argue this issue on appeal. Petitioner cannot establish that this testimony violated his constitutional rights.

Petitioner claimed that it was improper for the prosecution to use statements made during plea negotiations. The court ruled that petitioner's statements could be used for impeachment purposes if petitioner testified. The trial court explained:

> The Court has already ruled that statements here in this case made by the defendant pursuant to the plea negotiations would not be admissible in the prosecution's case in chief. At the time I made that ruling I made it on the strength of Michigan Rule of Evidence 410. Now I'm aware that there was another reason for that, that there's an express promise not to use it in the case in chief. That was pursuant to the prosecution's plea agreement. They could have attempted to secure a waiver from the defendant and even use it in their case in

chief, as the Michigan Supreme Court has already ruled, and that would have been permissible. But, they didn't do that. They said: "If you make statements pursuant to this plea agreement, we'll only use them against you in rebuttal," in effect, they could only be used for impeachment. "We won't use them as part of our case in chief," leaving anything else beyond the case in chief available to the prosecution for their use.

So, I think the first reason that the prosecution's motion should be granted is that the specific terms of the plea agreement allow it. By the way, that plea agreement represents an express waiver by the defendant of any right to later object and say, "No, you can't use those statements against me."

The other reason, of course, would be the Harris versus New York rationale, and that is that this was a voluntary statement given by the defendant as part of the plea negotiations. It should not then be a license to commit perjury, should be allowed to take the witness stand and lie without giving the prosecution the opportunity to confront him with those previously inconsistent statements, if in fact that's what happens, because the reasoning obviously behind that is the defendant can't make a voluntary statement like that and then turn around and lie about it simply because either it was the fault of the police for not giving Miranda warnings, and it's a Miranda violative statement, or here, the statements were given in connection with plea negotiations that obviously were presumed to be truthful at the time they were given, and certainly that would have been the reason for the polygraph requirement, to make certain that the defendant was being truthful. If he gets up on the witness stand and says something different from that, certainly the prosecution has a right to ask him, "Well, when were you lying, under oath now or at the time you made these statements that you told us about as part of the plea negotiations," and that's perfectly permissible for the reasons that the prosecution is arguing here.

So, the motion is granted, Mr. Teter. Those statements that are not admissible as part of the case in chief may certainly be used by way of impeachment if the defendant elects to take the witness stand, and if you lay a foundation that he's testifying contrary to what he has previously told you in those various statements that he made pursuant to this plea agreement. Motion granted.

Appellate counsel was not ineffective for failing to assert this issue in petitioner's appeal. Petitioner has failed to show cause and prejudice for his procedural default of this issue.

Petitioner argues that he was denied a fair trial because the prosecution withheld evidence that witness Bruce Long lied during testimony. The prosecution first disclosed that the witness had lied during the trial. Detective Gizzi testified during a trial motion hearing that Long told the detective that portions of his testimony were not true. The Michigan Court Appeals held that petitioner was not denied a fair a trial. In rejecting petitioner's claim on this issue, the court stated:

> Defendant argues that the trial court erred in denying his motion for mistrial. A trial court's decision to deny a motion for a mistrial is reviewed for an abuse of discretion. *People v Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001). A motion for mistrial should be granted only for an irregularity which is prejudicial to the rights of the defendant and which impairs the defendant's ability to get a fair trial. *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003).
>
> Defendant asserts that the prosecutor's failure to inform him of the witness' perjury at trial before defendant took the witness stand denied him a fair trial. Defendant argues that he would not have testified had the witness' perjury been put before the jury before defendant took the witness stand. We find that the trial court did not abuse its discretion in denying defendant's motion for mistrial.
>
> As the Court explained in *People v Lester*, 232 Mich App 262, 276; 591 NW2d 267 (1998),
>
>> Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. Prosecutors therefore have a constitutional obligation to report to the defendant and to the trial court whenever government witnesses lie under oath. Michigan courts have also recognized that the prosecutor may not knowingly use false testimony to obtain a conviction and that a prosecutor has a duty to correct false evidence. [Citations omitted.]
>
> Furthermore, the prosecutorial duty to correct perjured testimony to include perjured testimony that related to the witness' credibility and

not just the facts of the case. *Id*. at 277. In this case, it is undisputed that the witness gave false testimony at trial, but there is no evidence, and defendant suggests none, to indicate that the prosecutor was aware at the time the witness was on the witness stand that he was giving perjured testimony. However, the prosecutor was under an obligation to disclose the perjury as soon as he learned of it.

Despite the prosecutor's failure to disclose the witness' perjured testimony, defendant did discover that the witness gave false testimony before the close of proofs. A new trial is required only if the false testimony could in any reasonable likelihood have affected the judgment of the jury. *Id*. at 280. Because the witness was recalled to the stand and his perjury exposed to the jury, there is no question as to whether hearing the false testimony would have affected the outcome of the trial. Therefore, we find that a new trial is not warranted.

We reject defendant's contention that having this evidence presented before he testified would have changed his trial strategy, and he would not have testified. However, the only way to neutralize the evidence against him was to claim at trial that he was not the shooter and explain to the jury why he confessed and why the forensic evidence did not necessarily implicate him as the shooter. Nevertheless, even if the witness' perjured testimony had been exposed to the jury before defendant testified and defendant did, in fact, decide not to testify, we still conclude that the jury's verdict would not have been different. The witness' credibility was attacked throughout the trial. All instances of the witness' lying to the police and perjury were presented to the jury. Therefore, the jury had the opportunity to assess what weight to give the witness' testimony. Had defendant not testified, the jury would have been presented with very little evidence to substantiate defendant's claim that he did not kill the victim. Apart from the witness' testimony, the forensic evidence and defendant's own confession implicated him as the shooter. Furthermore, defendant's credibility was undermined when the prosecutor presented the numerous different versions of that evening's and the next morning's events that defendant told police. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for mistrial.

It is well settled that, under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the prosecution must disclose any evidence it has in its possession or of which it is aware which is both favorable to the accused and material to guilt or punishment. A defendant does not have to make

a specific request for *Brady* evidence before the government has an obligation to disclose favorable evidence. *See United States v. Agurs*, 427 U.S. 97 (1976). As the Court stated in *Kyles v. Whitley*, 514 U.S. 419 (1995), the obligation to disclose exculpatory evidence is required even absent a defense request when suppression of the evidence would be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* at 1565, citing *Agars* at 108. Clearly, petitioner cannot establish that he was prejudiced by the testimony of Bruce Long. It was established at trial that Long lied in his initial testimony to the jury. Moreover, petitioner has not shown that the prosecutor violated petitioner's right to a fair trial. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. It is clear that petitioner procedurally defaulted his first three issues and petitioner cannot establish cause and prejudice for his procedural default. Petitioner cannot show that the prosecution failed to disclose exculpatory evidence in a timely manner that denied petitioner a fair trial. Petitioner was given the opportunity to establish that witness Long lied in his initial testimony. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated: December 10, 2008